(No. 21930.—

THE AMERICAN SMELTING AND REFINING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (W. M. BROADNAX, Defendant in Error.)

*Opinion filed October 21, 1933.*

GREEN & VERLIE, (HAROLD G. TALLEY, of counsel,) for plaintiff in error.

WILLIAMS & RICE, (WILLIAM B. BRUCE, of counsel,) for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

This writ of error is prosecuted to review the judgment of the circuit court of Madison county in the matter of an application for compensation under the Workmen's Compensation act for an injury sustained by the defendant in error, W. M. Broadnax, (hereinafter called the plaintiff,) by reason of an occupational disease called lead poisoning, which he sustained while in the employ of the plaintiff in error (hereinafter called the defendant) and from which he claims he still suffers. The arbitrator awarded the plaintiff the sum of $10.92 per week for a period of forty-nine weeks, finding that that was the period of temporary total incapacity for work for which compensation was payable, and that the sum of $148 had been paid on account of the injury. On petition for review this award was confirmed by the commission, and on petition for certiorari sued out of the circuit court by the defendant, that court, on a hearing there, quashed the writ of certiorari and confirmed the decision of the Industrial Commission.

There is no controversy that the parties are under the Workmen's Compensation act or as to the weekly wage of the plaintiff, nor that notice of the injury (the occupational disease being classified as an injury under the statute) and demand for compensation were made within ample time. There is no conflict in the evidence that the plaintiff sustained lead poisoning on or about June 6, 1929, while in the employ of the defendant. The sole issue is

whether or not the plaintiff, by reason of lead poisoning, was disabled from work after November 9, 1929, the defendant contending that the plaintiff's disability ceased on that date and the plaintiff claiming that he still suffered from the disease.

On the hearing before the arbitrator the plaintiff was the only witness in his behalf. No medical testimony was offered on his behalf. The plaintiff at the hearing offered in evidence a copy of a letter said to have been written by a physician who attended him while he was in the United States Naval Hospital at Great Lakes, which stated in substance that the plaintiff was suffering from chronic plumbism. Objection was made to this offer and properly sustained.

The plaintiff's case rests solely upon his own testimony. He testified that at the time he was discharged as cured by the company's physician he did not feel well, was weak and had pains in his head, joints and stomach. He testified as to his entry into the hospital at Great Lakes and the treatment given him there, naming different drugs and medicines administered to him while at the hospital; that he could not straighten his finger and had a pain in his head; that he left the hospital on June 3, 1930, and was feeling better then and could straighten out his legs and could move around; that there was a knot coming on his neck and that he could not turn his head around; that his thumb would not straighten out, and that he had done practically no work since that time. This is the substance of his testimony. There was no evidence that any of these disorders were the proximate result of lead poisoning.

On behalf of the defendant two witnesses testified, one of whom was the safety engineer for the defendant. He testified that he knew the date when the plaintiff was discharged by the physician as having no further lead poisoning in his system; that at that time the plaintiff applied to the witness for work; that he stated that he felt like

working and wanted his old job back on the Scotch hearths, but that the witness refused him employment there and told him he could not put him on that job as the plaintiff was susceptible to lead poisoning but that the company would give him other employment. The plaintiff refused to go to work.

Dr. W. A. Day, the company's physician, testified for the defendant. He testified that he treated the plaintiff on June 26 for lead poisoning, treated him in August on account of an injury to his finger, and on September 12 treated him for lead poisoning; that he was at that time placed under an intensive lead treatment, which was kept up continuously until November 9; that on that day the patient's blood was absolutely normal, he was feeling well and perfectly willing to go back to work. The physician informed him, however, that he could not recommend to the safety engineer that he be permitted to work on the hearths, because having had lead poisoning he was more likely to absorb lead again. The physician further testified that lead poisoning causes a stippling of the red blood cells and a deposit in such cells; that during the course of the treatment he made several blood tests, and that the patient's blood was normal on November 9, 1929—no stippled cells and no lead poisoning in his system. It appeared during the course of the trial that the arbitrator hearing the case had had correspondence with some person connected with the hospital with reference to the disease from which the plaintiff suffered while he was in the hospital.

On behalf of the defendant it is contended that the award made by the Industrial Commission is against the manifest weight of the evidence, while on behalf of the plaintiff it is claimed that this court is conclusively bound by the findings of the Industrial Commission. In support of his contention the plaintiff cites the cases of *Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498, and *Albaugh-Dover Co.* v. *Industrial Board,* 278 id. 179. The

first mentioned case was decided in 1916, the second in 1917. Paragraph (f) of section 19 at the time of the decision of said cases by this court made the decision of the Industrial Commission, in the absence of fraud, conclusive as to the facts. However, the statute, since the decision of those cases, was amended in 1921 so that this court may review the facts in order to determine whether or not the decision is against the manifest weight of the evidence. Moreover, this court held in *Otis Elevator Co.* v. *Industrial Com.* 302 Ill. 90, that any legislative act attempting to prescribe a rule governing judicial action and determination is a usurpation of judicial power and unconstitutional. It is, however, the duty of this court to consider all the evidence in the record, and where the record discloses that the finding of the commission is without substantial foundation in the evidence its finding must be set aside. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Jolly* v. *Industrial Com.* 341 id. 46; *Berry* v. *Industrial Com.* 335 id. 374.) The rule is that this court will not substitute its judgment for the commission's judgment unless the latter is clearly and manifestly against the weight of the evidence. (*Rittler* v. *Industrial Com.* 351 Ill. 338; *Inland Rubber Co.* v. *Industrial Com. supra.*) The plaintiff in this proceeding has the burden of proving by competent evidence that not only the accident happened, but that also the accident was the proximate cause of the condition of incapacity from which he suffered. (*Sanitary District* v. *Industrial Com.* 343 Ill. 236; *Chicago Daily News Co.* v. *Industrial Com.* 306 id. 212; *Camp Spring Mill Co.* v. *Industrial Com.* 302 id. 136; *Republic Box Co.* v. *Industrial Com.* 336 id. 343.) The liability cannot rest upon imagination, speculation or conjecture but must be based on facts established by a preponderance of the evidence, neither can it rest upon a choice between two views equally compatible with the evidence. (*Rittler* v. *Industrial Com. supra; Byram* v. *Industrial Com.* 333 Ill. 152;

*Illinois Bell Tel. Co.* v. *Industrial Com.* 325 id. 102; *City of Rochelle* v. *Industrial Com.* 332 id. 386.) The Workmen's Compensation act was enacted for a beneficent purpose by requiring the employer to bear a part of the burden sustained from occupational diseases contracted or injuries sustained by the employee while in the service of the employer and while in the discharge of his duties as such employee. However, before an employee is entitled to recover an award under the provisions of this act he must bring himself within the provisions of the statute.

From the record it is apparent that the employee is suffering from some physical ailment. Whether that condition results from an occupational disease incurred while in the service of the defendant is not established by the record in the case. The physician for the defendant company had made no examination of the plaintiff since November 9, 1929. As to whether or not he is suffering from lead poisoning is a scientific question that must be determined by professional men, skilled in the practice of medicine and the diagnosing of human ailments. This is not a case where there is a traumatic injury resulting in a loss of or injury to some portion of the human body about which the plaintiff is competent to testify, but is a scientific subject, to be determined from objective symptoms as to the type of human ailment from which he suffers. It is apparent that the plaintiff did not produce all the witnesses on the hearing before the arbitrator or the commission which it was within his power to produce, although he did make a motion for continuance on the hearing before the arbitrator for the purpose of taking the deposition of the physician who he claimed had treated him at the naval hospital at Great Lakes for lead poisoning subsequent to November 9, 1929. This motion was denied. Where a material question is in controversy upon a material issue and the record discloses that all the evidence on that issue has not been produced, this court has the power to reverse

the judgment and remand the cause for the taking of further evidence on the part of either or both of the parties, upon the issues. *Camp Spring Mill Co.* v. *Industrial Com. supra; Chicago Daily News Co.* v. *Industrial Com. supra.*

The judgment is reversed and the cause is remanded to the circuit court, with directions to refer the claim of the plaintiff to the Industrial Commission for further consideration upon the record now presented and any further evidence that the parties may choose to present.

*Reversed and remanded, with directions.*