City of Chicago, Appellee, v. J. B. Spaulding, d/b/a New Century Feed Company, also known as New Century Company, Appellant.

Gen. No. 47,206.

First District, Third Division.

November 27, 1957.

Released for publication January 2, 1958.

Rose, Burt & Pierce, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel of City of Chicago (Sydney R. Drebin, and Harry H. Pollack, Assistant Corporation Counsel, of counsel) for plaintiff-appellee.

JUDGE BRYANT delivered the opinion of the court.

This appeal is from a judgment entered against defendant for an alleged violation of an ordinance of the city of Chicago and the imposition of a fine of $100 and costs by the court without a jury.

The defendant claims that there was error of law in the construction of the ordinance; that there was a fatal variance between the complaint and the evidence as to the date of the alleged violation, and that the judgment is not supported by a clear preponderance of the evidence.

The ordinance which it is alleged was violated and the provisions for the punishment of the violation are as follows:

"Chapter 99, Section 4 and Section 74
Municipal Code of Chicago

99—4. No building, vehicle, structure, receptacle, yard, lot, premises, or part thereof, shall be made, used, kept, maintained, or operated in the city, if such use, keeping, maintaining, or operating shall be the occasion of any nuisance, or shall be dangerous to life or *detrimental to health.*

Every building or structure constructed or maintained in violation of the building provisions of this code, or which is in an unsanitary condition, or in an unsafe or dangerous condition, or which in any manner endangers the health or safety of any person or persons, is hereby declared to be a public nuisance. Every building or part thereof which is in an unsanitary condition by reason of the basement or cellar being covered with stagnant water, or by reason of the presence of sewer gas, or by reason of any portion of a building being infected with disease or being unfit for human habitation, or which by reason of any other unsanitary condition, *is a source of sickness, or which endangers the public health,* is hereby declared to be a public nuisance. (Amend. Coun. J. 12-1-50, p. 7234; 6-30-54, p. 7829.)

99—74. Any person violating any of the provisions of this chapter shall be fined not less than five dollars and not more than two hundred dollars for each offense, except where otherwise specifically provided. A separate and distinct offense shall be held to have been committed each day any person continues to violate any of the provisions hereof. (Amend. Coun. J. 6-11-47, p. 308; 6-30-54, p. 7829.)" (Italics ours.)

The complaint as originally filed was amended in accordance with an order of court granting leave to amend said complaint on October 10, 1956, and on that date the court ordered a nonsuit as to count 2. The case thereafter went to trial and the judgment

409

rests upon count 1 of the complaint as amended, as follows:

"COUNT 1—Defendant did on or about January 30, 1956, own or was in charge of and did unlawfully maintain, operate or control the building or premises at 3939 S. Union Ave., Chicago, Cook County, Illinois, in that said defendant did not abate nuisance of odors to neighbors and emanating from drying operations carried on in space used as work space, in violation of Section 99—4."

The evidence indicates that the defendant makes animal feed, and in processing the feed it uses a fish solution and in drying of the feed this is condensed and is discharged into the atmosphere through a stack. The defendant has been located at 3939 S. Union Avenue for about ten years, and although it carries on other operations, the operation above referred to is the major one carried on by the defendant. The process involves the mixing of soy bean meal and a product known as fish soluble. The water soluble product is mixed, roughly 50-50, with the soy bean mix. The dehydrating process is removal of the moisture application by heat. Seventeen per cent of moisture is evaporated and the dehydrated product is carried along by a fan and then by gravity through a vapor collector and the vapors are sent off into the air. The greater frequency of the odor occurs when this is heated.

The plant is located in a district which is zoned for industrial use. On the east, south and west of the plant site the area is occupied by other industrial plants. On the north there is an area occupied by residences.

The ventilating inspector of the city of Chicago first testified that he inspected the premises on July 22, 1956 and that he smelled a strong fishy odor in the neighborhood, and that he again inspected the place on September 29, 1956 and smelled the odor in the neigh-

borhood. Later he testified that he was in error; that his inspection had been made on January 30th, and the complaint was amended to set forth that date as the date of violation. On the hearing on the amended complaint he testified that on January 30th he inspected the neighborhood and noticed a fishy odor in the neighborhood. He also testified that from the first inspection of the premises the defendant had been co-operative in trying to rid the plant and the neighborhood of the odor and had taken certain steps to do that, but that there were other steps which could be taken which had not as yet been done.

Three additional witnesses testified in corroboration of the existence of the odor on January 30, 1956. Two of them testified as to the continuing nature of the odor, and particularly in the summer months, and two additional witnesses testified, over objection, as their testimony was not connected with January 30, 1956, as to the continuing nature of the odor in the summer months. All five of these neighborhood witnesses testified either that they became nauseated as a result of the odor or that they got deathly sick from the smell, and that the odor was so offensive that they could not eat their dinner.

Two men, both of whom were tenants of the defendant, testified that they smelled the odor but that it was not offensive.

There is certainly a clear preponderance of the evidence that the odor emitting from the defendant's plant was prevalent throughout the neighborhood on January 30, 1956, and there therefore can be no fatal variance between the complaint and the evidence as to the date of the alleged violation.

There remains only to be determined whether the spreading of that odor throughout the neighborhood on the date in question constituted a violation of the city ordinance. There is uncontroverted evidence that on

411

the date in question—that is, January 30, 1956, which was the birthday of the husband of one of the witnesses, the odor was sickening and that the witness and her husband traced the odor to its source—the plant occupied by the defendant. That same witness also testified that on that day they were entertaining dinner guests and that they felt so nauseated they could not continue eating dinner. And another witness testified that on that date it smelled like something dead lying around—a dead animal, and that the smell was nauseating.

It appears to this court that odors which prevent people from eating their meal and which cause them to become nauseated, endanger the public health. It therefore is apparent that the maintenance of that smell is a nuisance under the strict definition of the ordinance, and therefore a violation has been proved.

It is urged that the testimony of these lay witnesses in regard to the effect of the odor upon them was incompetent to prove that the odor endangered the public health. This situation is clearly distinguishable from American Smelting Co. v. Industrial Commission, 353 Ill. 324, which involved the effect of lead poisoning, and International Coal & Mining Co. v. Industrial Commission, 293 Ill. 524, which involved the extent of the loss of use of the witness' arm. It is our opinion that it was proper for lay witnesses to testify as to nausea and inability to eat meals.

It is contended by the defendant that it was error to admit the testimony of the condition existing in the neighborhood by virtue of the odor on other days and occasions. It is our opinion that that was not reversible error, as it merely tended to corroborate the existence of the condition.

We are not unmindful of the cases which discuss the question of odors constituting nuisances. (Gardner v. International Shoe Co., 386 Ill. 418, and Patterson

412

v. Peabody Coal Co., 3 Ill.App.2d 311.) Both of those cases involved suits for damages arising out of the alleged violation of the rights of the plaintiffs by the defendants by the emission of noxious odors. They rest upon common law nuisances. In view of our finding here that this case rests upon the violation of an ordinance of the city of Chicago, and that both the complaint and the evidence come within the definition of what constitutes a violation of that ordinance, we deem these cases in regard to common law nuisances not in point. In the case of City of Chicago v. National Brick Co., 331 Ill. App. 614 (abst.), which involved the emitting of smoke and noxious gases from a manufacturing plant, which was testified to by lay witnesses, indicating that the emission of the noxious gas irritated their throats and caused them to cough, and a fine was imposed under the same section of the Municipal Code, the court upheld the imposition of that fine under those circumstances by the Municipal Court of Chicago.

It is also urged by the defendant that the nature of the neighborhood, in that it was largely manufacturing and industrial, would prevent the emission of industrial odors from being a public nuisance unless the odor was detrimental to the public health. Our finding in regard to the fact that the odor which produces the results described by the witnesses is of necessity a source of sickness and detrimental to the public health, disposes of that contention.

The judgment of the Municipal Court of Chicago will be affirmed.

Affirmed.

BURKE, P. J. and FRIEND, J., concur.