Richard Allen Snow, a Minor, by Loretta L. Snow, His Next Friend, Plaintiff-Appellee, v. David Judy and Ruby Judy, Defendants, David Judy, Defendant-Appellant.

Gen. No. 10,899.

Fourth District.

July 29, 1968.

Stifler & Snyder, of Danville (Thomas C. Stifler, of counsel), for appellant.

Dyer, Richmond, Moore & Nelson, of Hoopeston (Kenneth L. Richmond, of counsel), and Goldgehn, Friend & Leonardo, of Chicago, for appellee.

SMITH, P. J.

The four-year-old plaintiff recovered a judgment on a jury's verdict for $8,500 for injuries sustained when he was riding sidesaddle on a bicycle operated by his fifteen-year-old brother and ran into a single strand of barbed wire stretched across a lane on the farm of the defendant. Defendant appeals. The integrity of this judgment rests squarely upon the nature of the duty owed by the defendant to the minor plaintiff.

The plaintiff and other members of his family were longtime friends of the defendant and were visiting on his farm as social guests. A brother of the plaintiff, using a new bicycle belonging to a son of his host, was taking the plaintiff down to the pasture to "see some cows," a subject in which the young four-year-old had expressed some interest. The plaintiff sat sidesaddle on the horizontal bar of the bicycle with his hands on the handlebars for security. They went from the house down the driveway to a public road, down that road to the lane in question and down it to where the cows were pastured. The cows were fenced with an electrified single-strand barbed wire, a method of containing livestock commonly used in modern farming. The wire was about 3½ feet high, 12 to 14 feet from post to post across the lane, and between these posts was not electrified. The lane was for the sole use of the defendant in

moving his machinery, livestock and crops, and was in no sense a thoroughfare for public use. It does appear that the children of both families had walked, played and ridden bicycles in the lane. There were no flags, ribbons or other warning devices on the wire. At the time of the accident, the corn was about 3 or 4 feet high on one side of the lane, weeds on the other, and the plaintiff's brother testified that he did not see the wire as he came around a bend in the lane until he was about 6 inches from it. He denied telling the Judy boys that he was going too fast to see the wire, but stated that he was moving at a moderate rate of speed. The wire caught the plaintiff in the throat and lacerated the neck and windpipe, requiring surgery.

■ In Illinois, it seems clearly established that a social guest must take the premises of his host as he finds it and as it pleases the owner to maintain it provided, however, that the owner does not fail in his duty of warning the guest of what might be considered a trap, a concealed defect, or conditions which create a new danger of which the guest has no knowledge. ILP, Negligence, § 58. 25 ALR2d, p 600, states that ". . . the cases display a commendable unanimity in holding that a social guest injured by a defect in the premises may not recover against his host in the absence of evidence establishing something more than ordinary negligence in the maintenance of the premises. . . ." (For illustrative cases, see ALR Later Case Service, Vol 3, p 782.) Under these rules, liability to a particular person rests upon a duty to that person.

■ As stated in Prosser, Torts, § 53, p 331, 3rd ed 1964, ". . . in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. . . ." Where the experience of mankind teaches that the in-

strumentality, the conduct or the physical condition is per se inherently dangerous, society imposes a duty to act or to refrain from acting in a manner reasonably calculated to avoid injury to others from the known or readily apparent danger. To hold that barbed wire is in itself a dangerous instrumentality is to indict its widespread and extensive use for fencing on farmland everywhere. At least one court has judicially declared that barbed wire is not dangerous per se. Quigley v. Clough, 173 Mass 429, 53 NE 884.

The likelihood of injury therefore in this case must be found not in the inherent nature of the barbed wire, but in the manner of its particular use at the time and at the place of the occurrence. It is but a truism to remember that a perfectly innocuous instrumentality may and can and does cause injury when negligently and carelessly used. Thus, the likelihood of injury to anyone from barbed wire used to contain livestock in a lane to which the public is not invited or expected is less likely to cause injury when so used than if it were used in a thickly populated subdivision to "keep people off the grass" or to rope off a pew in a church at a wedding or a funeral.

██ ██ What was the duty of the defendant in this case? Was it not to use the barbed wire at all? We think not. Was it to mark the barbed wire with a sign, a rag, or a piece of wood to make it reasonably visible? Knowing that he had social guests on the farm, that they had in the past played and ridden bicycles in this lane and that the wire had been placed there since their last visit, what was the duty of the defendant? Was the barbed wire in this instance used in a manner and under circumstances which created a new danger of which the guests had no knowledge thereby imposing a duty upon the defendant to warn of its existence? The defendant testified that he knew that the Snow boys had ridden the bicycle elsewhere on the farm; that he didn't know whether the older boy had ever ridden down this lane or

423

path; that there were no markings on the barbed wire by way of warning and that its visibility rested solely in the wire itself. The brother of the plaintiff testified in substance that he was riding at a reasonable rate of speed; that he had ridden in this lane before; that the barbed wire was not there then; that the sun was casting shadows across the road from the brush and trees; that there were no rags or markings on the wire; that he did not know that it was there; that he saw the barbed wire about 6 inches in front of him and "by that time there was nothing I could do. I started to put on the brakes, but was so close by that time, I could see that was it." Under these circumstances, there was evidence in the record from which a jury might reasonably conclude that conditions existed which created a danger, that this was a new danger of which the guests had no knowledge, and that the single strand of wire was not reasonably visible under the circumstances of this record. We are of the opinion that these facts are facts within the province of the jury to determine, and once so determined, the law imposes a duty upon the defendant to reasonably advise of their existence. We cannot say that the jury's determination should be disturbed on the facts in this record.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.