(No. 49106.—

ELAINE FEFFERMAN *et al.*, Appellees, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Otha Butts, Appellant.)

*Opinion filed Jan. 27, 1978.—Rehearing denied March 30, 1978.*

Victor H. Goulding, Peter N. Kamberos, and Joseph A. Rosin, of Chicago, for appellant.

Morris A. Haft of Haft, Davis, Shapiro & Haft, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The Industrial Commission affirmed an arbitrator's award of workmen's compensation to the claimant, Otha Butts, for injuries sustained while employed in the dismantling of a building beneficially owned by the late Manuel Fefferman, his wife Etta, and daughter Elaine. The circuit court of Cook County set aside the decision of the Commission, and Butts appealed under our Rule

302(a) (58 Ill. 2d R. 302(a)).

The parties agree that the basic issue is whether the owners (Feffermans) of a building are liable to pay workmen's compensation to the injured employee (Butts) of an uninsured contractor (Charles Dixon Wrecking Co.) who had been hired by the owners to demolish the structure.

Manuel Fefferman was in the business of general merchandise, textiles, government surplus and hospital supplies. He, with his wife and daughter, was the beneficiary of a land trust; title was held by the Central National Bank. The real estate was improved by a building, which was used for the storage of Fefferman's mercantile goods, and was located at 1222-26 S. Michigan in Chicago. Fefferman had not elected to come under the Workmen's Compensation Act (hereafter Act) (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*).

The Dixon Wrecking Company was hired by Fefferman to demolish the building. It carried no workmen's compensation insurance. Butts was in the employ of the Dixon Company on January 18, 1973, when he was injured as a result of falling three stories while demolishing the structure. Butts filed a claim with the Industrial Commission, which afterwards affirmed the arbitrator's award. The circuit court set aside the award as against Fefferman but confirmed as against the Dixon Company.

The question can be narrowed to whether Fefferman was engaged in the business of maintaining or demolishing a structure as enumerated in section 3 of the Workmen's Compensation Act (automatic application of the Act when an employer elects not to become subject to the Act; Ill. Rev. Stat. 1973, ch. 48, par. 138.3). If so, Fefferman is liable under section 1 (Ill. Rev. Stat. 1973, ch. 48, par. 138.1). Section 1 in part reads:

> "This Act may be cited as the Workmen's Compensation Act.

(a) The term 'employer' as used in this Act means:

\* \* \*

3. *Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act who undertakes to do any work enumerated therein,* is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, *and in addition* thereto if he *directly or indirectly engages any contractor whether principal or sub-contractor to do any such work,* he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation." (Emphasis added.)

Section 3 in part states:

"The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra hazardous, namely:

1. The erection, maintaining, removing, remodeling, altering or demolishing of any structure.

2. Construction, excavating or electrical work."

Claimant Butts contends that Fefferman was in the business of "maintaining or demolishing" a structure under the Act. He cites the relevant cases, relying especially on *National Alliance of Bohemian Catholics v. Industrial Com.* (1936), 364 Ill. 249, and *Pulliam v. Industrial Com.* (1969), 43 Ill. 2d 364.

In *National Alliance,* the claimant was injured as the result of a fall while doing carpentry work, in the employ of an uninsured contractor, on a building owned by National Alliance. The latter, a nonprofit organization, received revenue from rents. The circuit court confirmed

the award of the Industrial Commission. In affirming the circuit court, this court, citing *Walsh v. Industrial Com.* (1931), 345 Ill. 366, held that "where one maintains buildings or structures for profit, whether that profit be as compensation for his services or by way of rentals received, and such maintenance requires a substantial portion of his time and attention, he must be said to be engaged in the business of maintaining a structure within the meaning of the Compensation act." (364 Ill. 249, 251.) (This court has determined, however, that maintaining a building as a home or as an incident to a business is not maintaining a structure for purposes of the Act. (*Jacobi v. Industrial Com.* (1930), 342 Ill. 210, 214. Accord, *Iowa-Illinois Gas & Electric Co. v. Industrial Com.* (1950), 407 Ill. 360, 363-64, 366-67, *T. Johnson Co. v. Industrial Com.* (1922), 306 Ill. 197, 201-02, *Davis v. Industrial Com.* (1921), 297 Ill. 29, 32.) In short, for a building owner who has elected not to be subject to the Act, to be liable for the injuries of an employee of an uninsured contractor under the Act, that owner must be engaged in an extrahazardous business or enterprise. Maintenance of a structure is one such business.

The claimant also relies on *Pulliam v. Industrial Com.* (1969), 43 Ill. 2d 364. There the owner of a funeral home, having previously elected not to be subject to the Act, was found to be maintaining a structure within the purview of the Act and therefore liable for the injuries of his employee. The employee, who was the driver for and aide to the owner, painted the funeral home when work was slack. He was hurt as the result of a fall from a ladder while painting. This court's rationale likened the use of a funeral home for wakes and services to the renting of rooms in hotels and motels for various activities. Although a separate charge for renting the rooms of a funeral home is not made, the cost of such use is figured into the final bill. The use of the building figured prominently in the

revenues the owner received from his business.

*Walsh v. Industrial Com.* (1931), 345 Ill. 366, and its progeny attach much weight to the test of receipt of revenues from buildings in determining the issue of maintaining a structure. Consistent with that, *Pulliam* held that the revenue received from a building used in conjunction with a business need not be directly received in order for the owner to be found to be maintaining a structure. Rather it is enough that the use generating the revenue "constitutes a part of the charge" by the owner. (43 Ill. 2d 364, 366.) Although *Pulliam* analogized the use of a funeral home to the renting of a hotel or motel room for a wedding reception or other ceremony, its clear rationale was that the building was a capital asset which had a noticeable or conspicuous impact on the generation of revenue from his business to the owner of the building. *Pulliam* effectively, albeit *sub silentio,* overruled the *Walsh* line of cases insofar as they held that maintaining a building as an incident to a business is *not* maintaining a structure under the Act.

We find that the use of the building for storage of his mercantile goods also figured prominently in the revenue Fefferman received from his business. The building was a capital asset used in conjunction with Fefferman's business: he stored his goods there. There can be no doubt that this contributed, even if indirectly, to the revenue he received from his business. The buildings in *Pulliam* and in this case were similarly, if not equally, central to the revenues of the respective businesses.

Hence, under the Act, Fefferman was an employer engaged in the extrahazardous business of maintaining a structure. As such, he was liable for injuries received by an employee, including the employee of an uninsured independent contractor, in the course of any work done on the building, here dismantling the structure. We find it unnecessary to reach the issue of whether or not Feffer-

man was engaged in the enterprise of demolishing a structure.

The Feffermans maintain that the findings of the Commission were against the manifest weight of the evidence. In support of that contention they make essentially two points: Butts' hospital records, because they were not certified as true by the hospital superintendent, were improperly received into evidence; and the only medical evidence offered was that of a letter from a physician who examined Butts 1½ years after the injury occurred.

Initially, we wish to note that, from our review of the record, we find the circuit court set aside the decision of the Commission as against the Feffermans only and not as against the Dixon Company. The inference we draw is that the tribunals below all agreed that Butts was injured while in the course of his employment, which was, at the time of the injury, dismantling the Feffermans' building. Further, the circuit court ruled in favor of the Feffermans only because, apparently, it found no employer-employee relationship existed between Manuel Fefferman and Otha Butts, an issue we disposed of above. The record does not indicate that the arbitrator, Commission and circuit court found the evidence insufficient to support the conclusion that Butts was injured in the course of his employment.

Our review of the record also leads us to conclude that Butts successfully carried the "burden of proving by competent evidence that not only [did] the accident" occur "but that also the accident was the proximate cause of the condition of incapacity from which he suffered." (*American Smelting & Refining Co. v. Industrial Com.* (1933), 353 Ill. 324, 328. Accord, generally, *Board of Trustees v. Industrial Com.* (1969), 44 Ill. 2d 207, 214.) Butts himself testified. The hospital records received into evidence clearly supported his claim of injury. (The record does not show whether or not the copies of the hospital

records were certified as true, but there is no allegation of lack of authenticity. Counsel for the Feffermans simply objected without stating the basis for the objection.) Although such records are not conclusive proof (Ill. Rev. Stat. 1973, ch. 48, par. 138.16), they are obviously supporting evidence.

The Feffermans next assert that the letter from the physician who treated Butts a year and a half after the injuries occurred should not have been admitted into evidence. As authority, they cite *American Smelting & Refining Co. v. Industrial Com.* (1933), 353 Ill. 324, in which an award was set aside. That case is distinguishable. There the claimant's case rested *solely* upon his testimony; the letter he unsuccessfully sought to have admitted was "said to have been written by a physician who attended" (353 Ill. 324, 326) him a year after the injury occurred; and two witnesses, one the company physician, testified on behalf of the company. In the case before us, Butts' claim rested not only on his testimony but on the hospital records. The letter from the examining physician (and the examination itself) was clearly more trustworthy than that in *American Smelting*. The examination was at the prompting of the arbitrator, with the knowledge of all the parties. And the Feffermans offered no witnesses.

The rule quite clearly is that the decision of the Commission will not be set aside unless it is against the manifest weight of the evidence. (*E.g., United States Steel Corp. v. Industrial Com.* (1976), 65 Ill. 2d 374, 382.) We find that the decision of the Commission was not against the manifest weight of the evidence.

For the reasons stated above, we reverse the judgment of the circuit court which found for the Feffermans.

*Judgment reversed; award reinstated.*