LYNETTE FUGATE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Marvin Carter *et al.*, Appellees.)

Fifth District (Industrial Commission Division)   No. 5—87—0036WC

Opinion filed December 3, 1987.

Jeffrey B. Rock, of Harvey & Stuckel, Chartered, of Peoria, for appellant.

Evans & Dixon, of St. Louis, Missouri (Robert Hendershot, of counsel), for appellee Hillsboro Hospital.

Mateyka, Hill & Hill, P.C., of Edwardsville, for appellee Security Savings & Loan of Hillsboro.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Lynette Fugate, appeals from an order of the circuit court of Montgomery County confirming the decision of the Industrial Commission awarding her compensation from respondent Marvin Carter, but denying her compensation from the respondents Security Savings & Loan Association of Hillsboro and Hillsboro Hospital.

On August 6, 1982, Security Savings & Loan (hereinafter Secu-

rity) entered into a contract for deed with Hillsboro Hospital (hereinafter Hillsboro) whereby Security purchased from Hillsboro grounds and a building thereon which had formerly been used as a hospital. Pursuant to the terms of the contract for deed, the title to the property remained in Hillsboro until such time as all of the payments under the contract had been made, although Security was placed in possession of the premises. The contract did provide that Security could have the building removed and could sell the fixtures and/or parts of the building upon written permission from Hillsboro. Subsequently, Hillsboro gave permission to Security to remove the building.

On October 1, 1982, Security entered into a contract with Marvin Carter. The contract provided that for the payment of $1, Security sold to Carter the hospital building and all of the contents but not the real estate. As stated in the contract, the purpose of the sale was for the removal of the building, which Carter agreed to do by demolition.

Claimant was hired by Carter on October 15, 1982, to maintain records of bills of sale, show people through the hospital, show things that were for sale, quote prices, and actually begin demolishing the building itself when she had time. As compensation, she was to receive 50% of the proceeds from the items she sold. Carter established her hours, provided for her use and provided T-shirts that said, "I work for Marvin Carter."

On November 12, 1982, while working in the building, claimant tripped over a piece of panelling and fell, injuring her right elbow, right wrist, and both knees. It was later determined that she had suffered a fracture of the radial head of the right arm and a possible navicular bone injury in her right wrist. She also suffered permanent damage to both knees resulting in permanent restrictions.

Claimant informed Carter of her accident. He informed her that he did not carry worker's compensation insurance. Inquiries to the Illinois Industrial Commission revealed that there was no insurance listed for Carter. Security had never inquired of Carter whether or not he carried worker's compensation insurance.

Claimant sought benefits from Carter, Hillsboro, and Security. At the hearing before the arbitrator, Carter did not appear; however, both Hillsboro and Security appeared and filed motions to dismiss. The arbitrator found that the claimant had sustained an accidental injury arising out of her employment and had suffered permanent partial disability to the extent of 15% in each leg and 20% to the right arm. She was awarded $285.25 per week for 107 weeks to be paid by her employer, who the arbitrator determined was Marvin Carter. The arbitrator found that no employer-employee relationship existed be-

tween claimant and either Hillsboro or Security. He also found that section 1(a)(3) of the Workers' Compensation Act, which is hereinafter set forth, was not applicable to either Hillsboro or Security:

"Any one engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of this Act [1. The erection, maintaining, removing, remodeling, altering or demolishing of any structure. 2. Construction, excavating or electrical work. (Ill. Rev. Stat. 1981, ch. 48, par. 138.3 (1), (2))] who undertakes to do any work enumerated therein, is liable to pay compensation to his own immediate employees in accordance with the provisions of this Act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he is liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation." (Ill. Rev. Stat. 1981, ch. 48, par. 138.1(a)(3).)

The arbitrator determined that section 1 of the Act was not applicable for the reason that Carter had possession of the hospital building at the time of claimant's injury and, in effect, became the owner of the building. Both Security's and Hillsboro's motions to dismiss were granted.

On review, the Industrial Commission affirmed the decision of the arbitrator. The Commission found that sections 1(a)(3) and 3(1), (2) applied only to:

"1. Anyone engaging in an enterprise referred to in Sections 1 and 2 of the Act,

2. Who undertakes to do the work enumerated therein."

Further, the Commission found that both Security and Hillsboro met only one of the two tests enumerated above, there being no evidence that either was "engaged in the business or enterprise" of demolition. Although Hillsboro derived income from the building at one time and could meet the "maintaining a structure" test of *Fefferman v. Industrial Comm'n* (1978), 71 Ill. 2d 325, it did not "undertake" the demolition job. Although Security "undertook" the demolition job through Carter, there was no evidence of its use of the building that would bring it within the "maintaining" test of *Fefferman*.

On review, the circuit court confirmed the Industrial Commission's decision, finding that Security received no income from the building and did not make use of it in its business. Nor did the demoli-

tion of one structure automatically mean that the owner was engaged in that business or enterprise. This appeal followed.

Claimant contends that the Industrial Commission erred in affirming the arbitrator's granting of Hillsboro's and Security's motions to dismiss. She maintains that there was sufficient evidence to show that both Hillsboro and Security were engaged in both the business or enterprise of maintaining or demolishing a structure.

In *Fefferman v. Industrial Comm'n* (1978), 71 Ill. 2d 325, the Dixon Wrecking Company was hired by Fefferman to demolish a building in which Fefferman, who was in the business of general merchandise, textiles, government surplus, and hospital supplies, stored his mercantile goods. During the demolition process, a worker was injured. Dixon carried no worker's compensation insurance. The worker filed a claim against both Fefferman and Dixon, and the arbitrator awarded compensation from both. On review, the Industrial Commission affirmed the awards. However, on review by the circuit court, the court confirmed the award as to Dixon but set aside the award against Fefferman.

The appellate court reversed and reinstated the award against Fefferman. The court concluded that Fefferman was engaged in the extrahazardous business of maintaining a structure. After reviewing a number of cases, the court stated as follows:

> "We find that the use of the building for storage of his mercantile goods also figured prominently in the revenue Fefferman received from his business. The building was a capital asset used in conjunction with Fefferman's business: he stored his goods there. There can be no doubt that this contributed, even if indirectly, to the revenue he received from his business." (*Fefferman v. Industrial Comm'n* (1978), 71 Ill. 2d 325, 330.)

In view of that conclusion, the court found it unnecessary to reach the issue of whether or not Fefferman was engaged in the enterprise of demolition.

■■ Revenue received from a building used in conjunction with a business need not be directly received in order for the owner to be found to be maintaining a structure. Rather, it is enough that the use generating the revenue "constitutes a part of the charge" by the owner. (*Pulliam v. Industrial Comm'n* (1969), 43 Ill. 2d 364, 366.) In that case, the court reasoned that the building in question was a capital asset which had a noticeable or conspicuous impact on the generation of revenue from his business to the owner of the building.

■ Reviewing the record before us, we conclude that neither Security nor Hillsboro was engaged in a business or enterprise of main-

taining or demolishing a structure. We observe, first, that while Hillsboro was still receiving payments under the contract for deed from Security at the time of the claimant's injury, the building was not being utilized as a hospital or for any purpose connected thereto. Further, the payments would continue to be made regardless of the existence or nonexistence of the building, since apparently the only interest Security had in purchasing the property was to obtain the real estate. As for Security, there is no evidence in the record before us that Security ever utilized the building for business purposes. Moreover, the building and its contents were sold to Carter prior to the proposed demolition. Therefore, the case before us is distinguishable from *Fefferman*, and the motions to dismiss were properly granted.

Claimant argues that public policy requires that there be a finding of coverage under section 1(a)(3) in this case. (Ill. Rev. Stat. 1981, ch. 48, par. 138.1(a)(3).) We agree with claimant that the Workers' Compensation Act is a humane law, remedial in nature, and wherever permissible, its language is to be liberally construed to effect the purpose of the Act. (*Pathfinder Co. v. Industrial Comm'n* (1976), 62 Ill. 2d 556; *B. W. Sales Co. v. Industrial Comm'n* (1966), 35 Ill. 2d 418.) However, we find nothing in the record before us to justify the extension of liability to two parties who otherwise would have no liability simply to achieve such a result.

The judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, McCULLOUGH, and CALVO, JJ., concur.