743 F.2d 1200
 53 USLW 2176
 Brenda MARTIN, individually and as the surviving spouse and
the administrator of the Estate of Larry Martin, and on
behalf of their minor children, Kimberly Martin and
Christopher Martin, and Kenneth Jackson and Karen Jackson,
on their own behalf and on behalf of their minor child,
Cheryl Jackson, Plaintiffs-Appellants,
v.
HARRINGTON AND RICHARDSON, INC., Defendant-Appellee.
 No. 83-2514.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 27, 1984.
Decided Sept. 12, 1984.
As Amended Sept. 27, 1984.
Opinion on Denial of Rehearing Oct. 16, 1984.
 
 Bernard M. Mamet, Chicago, Ill., for plaintiffs-appellants.
 Frank M. Covey, Jr., McDermott, Will & Emery, Chicago, Ill., for defendant-appellee.
 Before PELL, CUDAHY, and POSNER, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 During January of 1981, Donovan and James Barnes shot and killed Larry Martin and wounded Kenneth Jackson. Plaintiffs seek to recover for the injuries suffered by the two men, but not from the Barnes brothers, who have little or no money. Plaintiffs have instead filed this diversity action against Harrington and Richardson (H & R), the manufacturer of the gun used by the Barnes's, alleging that the gun was an unreasonably dangerous product and that H & R was therefore strictly liable for the damage caused by the weapon. The district court found no support for plaintiffs' theory in Illinois law and dismissed the suit for failure to state a cause of action.
 
 
 2
 Before examining the district court's conclusion we should clarify the nature of plaintiffs' claim, which is not clear from either the complaint or the briefs filed in this court. Although plaintiffs refer to the gun as an unreasonably dangerous instrument and complain of H & R's conduct in selling the gun to the public, it becomes clear from examining plaintiffs' arguments that they do not, and cannot, seek recovery under products liability or negligence.[1] Products liability requires a defect of some sort in the gun, a claim that plaintiffs expressly disavow. Plaintiffs instead claim that H & R's liability stems solely from "the manufacture of an inherently dangerous, nondefective instrument." Plaintiffs' claim, in essence, is that manufacturing and selling handguns to the public is an ultrahazardous activity that gives rise to strict liability for any damage done by the guns. The district court dismissed plaintiffs' claim after finding:
 
 
 3
 [T]here is no case or statutory law demonstrating that such a cause of action exists in Illinois, and we decline to create such a new cause of action. In the present state of the law, a manufacturer of a non-defective handgun is not liable for injury caused by use of the gun, whether that use be lawful or unlawful. Accord Bennet v. The Cincinnati Checker Cab Co., Inc., 353 F.Supp. 1206, 1210 (E.D.Ky.1973) (holding that a firearms dealer was under no duty to protect plaintiff, who was shot by a gun imported by dealer, from criminal attack). If a cause of action such as the one proposed by plaintiffs is to become recognized in Illinois, it must be done by the Illinois legislature or the Illinois courts, not by a federal court in a diversity action.
 
 
 4
 Plaintiffs claim that the district court shirked its responsibility to decide the case presented to it as an Illinois court and that, had the district court fulfilled this responsibility, it would have concluded that a cause of action exists. Plaintiffs ask that we either reverse the district court's finding that no cause of action exists or at least remand the case to the district court with instructions to determine whether such an action would be recognized by an Illinois court.
 
 
 5
 Although the district court's opinion, which we have quoted in its entirety, may be Spartan, we do not think that it reflects a failure to determine how an Illinois court would decide the issue. The duty of a district court sitting in diversity faced with a novel claim such as plaintiffs' is to predict, as best as possible, how an Illinois court would decide the issue. City of Northglenn v. Chevron, U.S.A., Inc., 519 F.Supp. 515 (D.Colo.1981); Indiana Harbor Belt Railroad v. American Cyanamid Co., 517 F.Supp. 314, 317 (N.D.Ill.1981). The district court here indicated that it could find no support for plaintiffs' claims in Illinois law, and that at least one other jurisdiction had rejected an identical claim. Examining decisions from other jurisdictions in the absence of Illinois cases is a legitimate means of predicting how an Illinois court would rule on plaintiffs' claims. Indiana Harbor Belt Railroad, 517 F.Supp. at 317. We cannot agree, then, that the district court did not discharge its duty to predict how an Illinois court would decide plaintiffs' claim. We turn now to examine the accuracy of that prediction.
 
 
 6
 Illinois recognizes strict liability under two theories: unreasonably dangerous defective products and ultrahazardous activities. Strict products liability in Illinois follows the formulation set forth in section 402A of the Restatement (Second) of Torts (1965), which imposes strict liability upon one "who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." See Rios v. Niagara Machine & Tool Works, 59 Ill.2d 79, 319 N.E.2d 232 (1974) (relying on 402A formulation). Under Illinois law, a product is "unreasonably dangerous" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Palmer v. Avco Distributing Corp., 82 Ill.2d 211, 45 Ill.Dec. 377, 412 N.E.2d 959 (1980) (quoting Restatement (Second) of Torts section 402A, comment i (1965)). A product may be unreasonably dangerous because of a design or manufacturing defect or because of failure to warn of a danger posed by the product of which the average consumer would not already be aware. A nondefective product that presents a danger that the average consumer would recognize does not give rise to strict liability. Garrison v. Heublein, Inc., 673 F.2d 189 (7th Cir.1982) (Illinois law does not require warnings on alcoholic beverages as dangers posed by alcohol are common knowledge); Hunt v. Blasius, 74 Ill.2d 203, 23 Ill.Dec. 574, 384 N.E.2d 368 (1978) (danger posed by solid sign post obvious to any motorist).
 
 
 7
 Plaintiff has not directly pursued a products liability approach here because the gun involved in the shootings was not defective and posed an obvious danger that required no warning, and thus was not unreasonably dangerous. A second obstacle to recovery under products liability is the Illinois products liability statute of limitations, which plaintiffs appear to concede would bar a suit based upon the sale of this gun under the theory of products liability as the gun apparently was sold during the 1930's. See Ill.Rev.Stat. ch. 110 p 13-213. As we shall discuss later, this statute may present an obstacle to plaintiffs' claim that the sale of the gun was an ultrahazardous activity.
 
 
 8
 Plaintiffs attempt to circumvent the problems posed by products liability by urging that the sale of handguns to the public is an ultrahazardous activity. Under section 519 of the Restatement (Second) of Torts: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Section 520 of the Restatement sets forth the following factors to be considered in determining whether an activity is abnormally dangerous:
 
 
 9
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 
 
 10
 (b) likelihood that the harm that results from it will be great;
 
 
 11
 (c) inability to eliminate the risk by the exercise of reasonable care;
 
 
 12
 (d) extent to which the activity is not a matter of common usage;
 
 
 13
 (e) inappropriateness of the activity to the place where it is carried on; and
 
 
 14
 (f) extent to which its value to the community is outweighed by its dangerous attributes.
 
 
 15
 Illinois has long recognized strict liability for damage caused by engaging in an abnormally dangerous or ultrahazardous activity, although it has never explicitly relied upon the Restatement factors in determining whether a given activity is abnormally dangerous. In City of Joliet v. Harwood, 88 Ill. 110 (1877), the Illinois Supreme Court held that blasting with dynamite in a residential area was intrinsically dangerous and gave rise to strict liability for the blaster. A similar result was reached in FitzSimmons & Connell Co. v. Braun, 199 Ill. 390, 65 N.E. 249 (1902), and Opal v. Material Service Corp., 9 Ill.App.2d 433, 133 N.E.2d 733 (1956).[2] More recently, the court in Snow v. Judy, 96 Ill.App.2d 420, 239 N.E.2d 327 (1968), found that the use of barbed wire was not abnormally dangerous, although the negligent use could be the basis for liability. Finally, a federal district court sitting in diversity held that shipping acrylonitrile, a hazardous and toxic substance, was an ultrahazardous activity that subjected the shipper to strict liability under Illinois law. Indiana Belt Harbor Railroad Co., 517 F.Supp. 314. In so holding, the court relied upon the Restatement formulation of abnormally dangerous activities.
 
 
 16
 If plaintiffs were claiming that the use of a handgun was an ultrahazardous activity the argument would clearly fit within the parameters of Illinois law. However, plaintiffs' attempt to impose strict liability for engaging in an ultrahazardous activity upon the sale of a nondefective product is unprecedented in Illinois, and in fact is only supported by a recent district court decision from the Eastern District of Louisiana. Richman v. Charter Arms Corp., 571 F.Supp. 192 (E.D.La.1983). Balanced against Richman is the recent decision of the Circuit Court of Cook County, Illinois, rejecting a claim identical to plaintiffs'. Riordan v. International Armament Corp., 81 L 27923 (Circuit Court Cook County, Law Division, July 21, 1983). Although a trial court decision is not determinative, the reasoning of Riordan and our own misgivings about the result in Richmanprovide persuasive support for rejecting plaintiffs' claim.
 
 
 17
 Riordan rejected the claim that selling handguns is an ultrahazardous activity after observing that:
 
 
 18
 Cases requiring liability impose liability for the ultrahazardous activity as a result of the use of the product. To recognize liability of a manufacturer or distributor would virtually make them the insurer for such products as explosives, hazardous chemicals or dangerous drugs even though such products are not negligently made nor contain any defects. Although such a social policy may be adopted by the legislature, it ought not to be imposed by judicial decree.
 
 
 19
 Riordan, slip op. at 3 (emphasis in original).
 
 
 20
 Plaintiff would have us ignore the concerns expressed in Riordan, the only Illinois decision directly on point, and instead adopt the reasoning of Richman. In Richman, the court found that a nondefective handgun was not unreasonably dangerous, but held that selling such a gun to the public could constitute an ultrahazardous activity. The court recognized that possession of handguns is legal in Louisiana, which indicated that "the legislature does not think handgun manufacturers act unreasonably (are negligent per se) when they market their product to the general public.... [T]he legislators do not think marketing handguns for sale to the general public is an 'unreasonably dangerous' activity." 571 F.Supp. at 198. Nonetheless, the court found that selling guns could constitute an ultrahazardous activity. The court observed that an ultrahazardous activity is not an unreasonably dangerous one, but rather simply an activity that poses a high degree of risk that is justified by the value of the enterprise. 571 F.Supp. at 199. In this situation, the actor is not negligent in engaging in the activity, but nonetheless must bear the risk of damages caused by the activity. Such is clearly the case with blasting or transporting toxic substances, but we have found no decision other than Richman that has held that the lawful sale of a non-defective product can be an ultrahazardous activity.
 
 
 21
 Our primary misgiving with Richman is that it blurs the distinction between strict liability for selling unreasonably dangerous products and strict liability for engaging in ultrahazardous activities by making the sale of a product an activity. Accepting plaintiffs' argument would run counter to Illinois' long-standing requirement that strict liability for the sale of a product be limited to unreasonably dangerous products. Illinois has never imposed liability upon a non-negligent manufacturer of a product that is not defective.
 
 
 22
 A change in this policy, as observed in Riordan, would require that manufacturers of guns, knives, drugs, alcohol, tobacco and other dangerous products act as insurers against all damages produced by their products. Whatever the economic wisdom of such a policy might be, there is no basis for assuming that Illinois wishes to adopt it.
 
 
 23
 We are also concerned that plaintiffs' argument would thwart Illinois' policy regarding possession of handguns. The right of private citizens in Illinois to bear arms is protected, at least against all restrictions except those imposed by the police power, by the Illinois Constitution. Ill.Const. art. I, Sec. 22. The State of Illinois regulates, but does not ban, the possession of handguns by private citizens. Firearms and Ammunition Act, Ill.Rev.Stat. ch. 38 p p 83-1 to 83-16.3. As Richman recognized, this express policy is a strong indication that handguns should not be considered unreasonably dangerous. See also Mavilla v. Stoeger Industries, 574 F.Supp. 107 (D.Mass.1983) (Massachusetts' decision to allow possession of handguns precludes imposing strict liability on handgun manufacturer under products liability). Imposing liability for the sale of handguns, which would in practice drive manufacturers out of business, would produce a handgun ban by judicial fiat in the face of the decision by Illinois to allow its citizens to possess handguns.
 
 
 24
 A third reason for rejecting the holding in Richman is the court's finding that criminal misuse of a handgun is not an intervening cause that breaks the causal connection between the manufacturer's actions and the injury. In Illinois, an unforeseeable, intervening cause relieves the manufacturer of liability, and whether such an intervening cause exists can be determined as a matter of law in some circumstances. Williams v. RCA Corp., 59 Ill.App.3d 229, 17 Ill.Dec. 144, 376 N.E.2d 37 (1978). With the exception of Richman, every decision that has considered the foreseeability of criminal misuse of firearms has found that such criminal activity is not reasonably foreseeable. Bennet v. Cincinnati Cab Co., 353 F.Supp. 1206 (E.D.Ky.1973); Adkinson v. Rossi Arms Co., 659 P.2d 1236 (Alaska 1983); Hulsman v. Hemmeter Development Corp., 65 Hawaii 58, 647 P.2d 713 (1982); Robinson v. Howard Brothers of Jackson, Inc., 372 So.2d 1074 (Miss.1979); Hulsebosch v. Ramsey, 435 S.W.2d 161 (Tex.1968). We see no reason to doubt that Illinois would follow the weight of authority and hold that criminal misuse of a handgun is not a foreseeable consequence of gun manufacturing.
 
 
 25
 Nor do we believe Illinois is ready to adopt a theory which in essence would hold that whenever someone is injured there must be someone also answerable in damages.
 
 
 26
 One is reminded, if the contention of the appellants were carried to its logical conclusion, of a figmental, perhaps allegorical, nation called Litigatia described in the article by Paul B. Horton, How Lawsuits Brought the World's Greatest Nation to Ruin, Medical Economics, February 21, 1977, 142:
 
 
 27
 Throughout the economy, new ventures disappeared. New factories were not built, since no locations could be found where it was legally possible to build them. In 1998, the U.S. Supreme Court promulgated the "omnia culpa" doctrine (Lipshitz v. General Motor Corp.), which in plain language meant that whenever a person suffered injury through use of a product, all persons or corporations who had any contact with the product, from raw material to delivery van, were equally liable to damage claims. It soon became very difficult to get anyone to make or sell anything, and most people went back to the ancient art of making things for themselves.
 
 
 28
 Id. at 149 (emphasis in the original). Hopefully, the dire thought expressed is not prophetic for our jurisprudence.
 
 
 29
 Finally, we note in passing that any problems caused by the statute of limitations regarding a traditional products liability action would seem to exist when the sale of a product is attacked as an ultrahazardous activity. Illinois limits the period during which a "product liability action" may be brought. Ill.Rev.Stat. ch. 110 p 13-213. The definition of "product liability action" is not limited to sales of unreasonably dangerous products, but also includes "any action based on the doctrine of strict liability in tort brought against the seller of a product on account of personal injury ... caused by or resulting from the manufacture ... [or] sale ... [of] any product." Ill.Rev.Stat. ch. 110 p 13-212(a)(3). Plaintiffs' claim is based on strict liability arising out of the sale of a product, a claim that would appear to fall within the letter of the statute and its purpose, which is to protect manufacturers from endless exposure to claims arising from the sale of a product. We fail to see how the application of the statute is altered by attacking the sale as an ultrahazardous activity rather than by attacking the product as unreasonably dangerous. While we cannot determine from the record before us whether plaintiffs' claim actually runs afoul of the statute, the statute is evidence that the policy of Illinois is to treat all strict liability claims arising from the sale of a product identically and to limit such suits to cases involving unreasonably dangerous products.
 
 
 30
 In conclusion, we agree with the district court that there is no support for plaintiffs' claim in Illinois law and no basis for predicting that an Illinois court would expand existing law to accommodate plaintiffs' claim. Accordingly, the decision of the district court is AFFIRMED.
 
 
 31
 CUDAHY, Circuit Judge, concurring.
 
 
 32
 I agree that there is little reason to believe that the Illinois Supreme Court would enforce a theory of strict liability against handgun manufacturers at this time. That is the question presented by this diversity case and I think Judge Pell has answered it correctly.
 
 
 33
 Our analysis may be incomplete, however, if we lose sight of the fact that, in a broad economic sense, death and injury from bullet wounds are an external cost of handgun manufacture and sale, imposed on gun victims or on society as a whole. See Silk, Contemporary Economics 132-33 (1970). The central reality is that these costs exist in fact, and the only question is who should bear them. The imposition of strict liability on the manufacturer or seller of handguns should not be viewed as an attempt to drive handguns from the market--for the courts, an improper goal. Rather, it is an effort to place the costs inherent in handguns on the users rather than on the victims.
 
 
 34
 If a victim has been injured and attempts to recover damages from the user of the handgun, the user is frequently unreachable or judgment-proof. Strict liability for the manufacturer or marketer of handguns, on the other hand, places the costs of injury on a party who is able to spread those costs widely among all users through higher prices. An argument can be made for thus internalizing the costs in the price of handguns and thereby distributing them to all users rather than imposing them on shooting victims, which is the alternative. As we have noted, the costs exist and someone must pay them.
 
 
 35
 The justification for the imposition of strict manufacturer liability is that the manufacturer, "by marketing a product, ... has assumed a special responsibility to the public and should bear the costs of accidents, as a cost of doing business." Note, Manufacturers' Liability to Victims of Handgun Crime: A Common-Law Approach, 51 Fordham L.Rev. 771, 778 (1983). See also Turley, Manufacturers' and Suppliers' Liability to Handgun Victims, 10 N.Ky.L.Rev. 41, 45 (1981). In practice, however, neither the manufacturer nor even an insurance company would ultimately bear the costs; these enterprises would simply serve as distributors of the risks and costs associated with handgun use among those who use handguns.[1] The imposition of such liability on manufacturers and marketers merely constitutes notice that
 
 
 36
 they must be prepared to compensate any innocent parties who may incidentally be harmed, no matter how carefully and faultlessly the activities are carried out.... The prospective responsibility imposed ... by law applies even to events beyond their control, but ... they can guard against disastrous expenses by adjusting their prices and figuring compensation costs among their normal business expenses.
 
 
 37
 Feinberg, Collective Responsibility, 65 J.Phil. 674 (1968), reprinted in Feinberg and Gross, Philosophy of Law 411-12 (1975).
 
 
 38
 Strict manufacturer or seller liability might be imposed under Restatement (Second) of Torts, sections 519-20, following the reasoning of Richman v. Charter Arms Corp., 571 F.Supp. 192 (E.D.La.1983).[2] Whatever may be said for or against this approach, however, it is not now the law of Illinois. And that is where, for present purposes, the analysis must end.
 
 PETITION FOR REHEARING
 
 39
 This matter is before the court on the petition for rehearing filed by Brenda Martin, et al., plaintiffs-appellants.
 
 
 40
 After oral argument, appellants made a motion to have this court certify to the Illinois Supreme Court the question "whether there was a cause of action in Illinois tort law by a victim of a handgun against the manufacturer of that handgun." We note that the Illinois Appellate Court has recently reached a conclusion similar to our own. In Linton v. Smith & Wesson, 120 Ill.App.3d 82, 676 Ill.Dec., 805, 469 N.E.2d 339 (1st Dist. 1984), the plaintiff alleged that defendant had a duty to "prevent the sale of its handguns to persons who are likely to cause harm to the public." The court, with Justice Stamos writing, held that there is no duty imposed "upon the manufacturer of a non-defective firearm to control the distribution of that product to the general public." In light of this disposition by the intermediate state court, we are even more convinced of the correctness of the result reached in this case. Accordingly, plaintiffs' motion to certify is denied.
 
 
 41
 Because the matter of Certification was the principal basis of the petition for hearing, and because the court is otherwise satisfied that the correct result has been reached in its decision on this appeal, the petition for rehearing is DENIED.
 
 
 
 [1]
 Plaintiffs make a passing reference to H & R's negligence in failing "to prevent the gun from getting into the hands of individuals who were psychologically unsuited to possess a handgun," but the complaint does not allege negligence and plaintiffs' counsel admitted at oral argument that H & R could do nothing to prevent such people from getting guns other than cease selling guns entirely. Plaintiffs' claims, then, are solely grounded on strict liability and not on negligence
 
 
 [2]
 Plaintiffs' misrepresentation notwithstanding, Opal did not involve merely the storage of dynamite, but rather imposed liability for blasting
 
 
 [1]
 Appropriate consideration would presumably have to be given to the problem of handguns already in public hands for which no "risk premium" was charged the user at the time of purchase
 
 
 [2]
 The Illinois courts, under Restatement (Second) of Torts, sections 519-20, have not apparently held any defendant liable on the theory that the sale (as opposed to the use) of devices like handguns is an ultrahazardous activity. Apart from this limitation, the sale of at least certain types of handguns might fit several of the factors listed in section 520, as defining an ultrahazardous activity: existence of a high degree of risk of harm; likelihood that the resulting harm will be great; inability to eliminate the risk by the use of reasonable care; extent to which the activity is not a matter of common usage; inappropriateness of the activity to the place where it is carried on; and extent to which its value to the community is outweighed by its dangerous attributes